Number 7, 3100, Dietrich against the Department of the Navy. Mr. Thomas. May it please the court, I represent Mr. Dietrich who was employed with the government for approximately 16 years. At the end of that 16 year period he was terminated based on a notice of proposed removal and ultimately a decision that alleged eight charges of misconduct. Six of these charges alleged basically a failure to complete work by the deadline established by his immediate supervisor. One charge was failing to report to work, unauthorized absence for one day. And the other charge was sending an email in violation of the chain of command policy. Can we focus on that last one for a moment? The email? The email. Yes. Is the email in the record, the May 31st email? Well, I don't believe it is because it was never provided to Mr. Dietrich as part of the charge. It was not introduced by either side as evidence in the case, so we don't really know what it says. I don't think that it was introduced as an exhibit. I don't believe it's part of this record. But there was a whole issue about that email because he was charged with a May 21st email. As the case progressed it became apparent that the May 21st email wasn't the email at issue. The agency alleged that they made a typographical error, that they really meant May the 31st. And so we argued that they shouldn't be allowed to sustain that charge because it hadn't been properly charged. Well, what I'm asking is, as I understand it, the charge was sustained. The charge was sustained. Without the administrative judge, without the board knowing what was in the email. There was testimony. There was testimony about what was in the email? About what was in the email. Where did we find that testimony? There was testimony both from Mr. Dietrich, because he explained why he didn't believe the email was inappropriate. And there was testimony from his immediate supervisor to the effect that the email violated the command's chain of policy. I mean, chain of command. Yeah, but that has to do with the person to whom the email was sent. Exactly. Rather than the content of the email. What I'm trying to understand is what was the content of the email? I can't figure it out. Is there some place in the record where it tells me what the content of the email was? I think the best description of the content of the email is probably Mr. Dietrich's testimony on that issue. He goes into a… Is that in the appendix? It is in the appendix. It's in the transcript. Which page? It would be in volume two. You can give it to me. Yes, I'll find it. The gist of my argument… I want to ask you one or two more questions. Yes, sir. He sent this email to someone in HR, right? The head of human resources for the Pacific. What does the record show about the duties of human resources in the Pacific? What are they supposed to do? I don't believe that there is anything in the record about what the head of human resources in the Pacific does. I think everybody just assumed that the head of human resources would have the ability to address human resource related issues, but there is nothing in the record specific about what he does or does not do. But it wasn't a challenge that such a person would have been an appropriate recipient of this email. Well, it's not that he was inappropriate in the sense that it was outside of his duties or responsibilities or power. It was alleged by the agency that it was inappropriate because it was a violation of the Marine Corps chain of command policy. That policy is talk to your supervisor first, then go to the next level. You're not allowed to go outside of the chain according to their policy. Even to talk to human resources? Well, our argument was that you should be allowed to. In fact, this is in the record, Mr. Dietrich did go to this very individual over a prior human resources issue. There was a whole other issue about Mr. Dietrich being terminated before this case improperly. Now, this is one charge out of seven that were sustained, right? Yes. This is one seventh of what we're talking about. Well, not exactly, but in a numerical sense, yes. In a numerical sense, he had six instances of failing to meet deadlines, is that right? Yes, sir. Isn't that pretty difficult to deal with that kind of employee in a system where you have to meet goals and achieve deadlines? Well, I would concede that under certain circumstances, it could be. But under the facts of this case, I don't think that is the case for a couple of reasons. Number one, with regard to the- That's a factual issue that was determined against you by the board, however, right? Right. The factual issue was that he did what he was accused of with one exception. He was one of the late ones where they figured out he might have actually done a part of it or something. Yes. He ordered the furniture. Well, he did order the furniture, but he ordered that late. That's not the one that wasn't sustained. The one that wasn't sustained was he did it and he did it by the deadline. Okay. So you have six instances of someone missing deadlines. Six instances, five of which were sustained, yes, sir. I thought the record reflected that it wouldn't have been terminated for those six instances, but that the email was the reason he was terminated. Well, I don't know that you could be that precise in picking the one that was the one, but they were clear that they regarded the email as the most serious because what happened was for four of the failures to follow instructions, failures to meet these deadlines, he was given a five-day suspension. So we know that four of those failure to follow those deadlines deserve a five-day suspension. And then what happened, the email came along. They took away the five-day suspension and they gave him a 14-day suspension, proposed 14-day suspension. So at that point we know that four of the missed deadlines and the email deserved a 14-day suspension. But then they withdrew that because there was two more instances of missed deadlines and the unauthorized absence for a day. And so the 14-day suspension jumped to a termination based on the two more missed deadlines, one of which was not sustained, and the unauthorized absence. But when you have a kind of mounting series of failures here, don't you think the penalty ought to jump? Absolutely. It jumped from five to 14. At what point do you think it warrants removal? Well, I don't have an argument with the five. I don't have an argument with it jumping from five to 14. My argument is 14 to termination. And my argument is based on this. If you look at the 14-day suspension, the charges that were actually based on that were more serious than the charges that are in the removal. They actually took one charge out. What about the AWOL? The AWOL is cut and dry. He was absent for one day. He had an explanation for it, but no defense to it. I have no argument about it, except that if you look at the table of penalties, you will see that an unauthorized absence for one day and a failure to meet deadlines, as alleged in this case, are the least serious types of offense that he was to commit. Six deadlines, would you expect to be disbarred? Six deadlines in your profession as an attorney? Missed six filing dates? I can conceive of circumstances where the answer would be yes, certainly. But I can also conceive of circumstances where the answer would be no. Those circumstances would be something that would be left to the fact finder, right? We wouldn't really delve into the facts so much here, unless they were arbitrary and capricious in their implementation of the law. Yes, sir, and that is my argument. They were arbitrary and capricious. Arbitrary and capricious and abuse of discretion. When you compare the 14-day suspension with the removal and you compare the charges, they've actually terminated him for a group of charges that are less serious than what was in the 14-day suspension. And that's basically my argument, is that if you apply the line of reasoning that was followed in the Cooney case and admitted the Cooney case is not a court of appeals case, Cooney v. Department of Air Force, cited on page 28 of my initial brief, what they did was they compared a five-day suspension, I believe, based on two charges with a termination based on four charges. And they said, well, it's unreasonable to jump from a five-day to a termination based on a doubling of the charges because, number one, one of the charges was not sustained and the second charge, while sustained, we can understand why he refused to follow his supervisor's direction. So there was mitigation, there was an explanation, and so they said the punishment was inappropriate. What happened here in the decision to remove him? What did that decisional official say about the role of the email in his removal? He said that was the most serious. Where do I find that? Let's see. On page 181 of the joint appendix, Mr. Duck, who is the deciding official and the second-level supervisor to Mr. Dietrich, admits that all of these charges individually are relatively minor with the exception of the email charge. He finds that charge to be serious because he sees that tantamount to insubordination. He says, the way I look at that charge is the supervisor told him not to do it and he did it anyway. And I agree, it is the most serious charge. I have no argument with that. And that's why the penalty went from five days to 14 days. Where does he say that on 181? I think it's on 181. That's what I have in my note. Thank you. Yeah, I think I gave you the wrong page, Your Honor. I apologize for that. You can find it in Chalice during your rebuttal period. All right. But the deciding official clearly said that, and I'll find that on my rebuttal. So that's basically our argument, is that it was arbitrary and capricious because they removed, the charge wasn't as serious when it was a 14-day, I mean, the charge was more serious when it was a 14-day because in that charge, in that proposed suspension, they were alleging that Mr. Dietrich intentionally missed these deadlines, deliberately not following instructions and missing deadlines. And if you look at the table of penalties, that is a more serious charge. When the removal came around, they did not allege it as a deliberate failure, just a failure to meet the deadlines. And that results in a less serious charge, if you look at the table of penalties on page 52. So that is basically why we are suggesting that it's arbitrary, capricious, and abuse of discretion is because you've got a termination for, although perhaps one or two more charges, they are less serious charges, and also there is an explanation. For example, Mr. Dietrich says, yes, I did not meet with the library. That was one of the charges. He was supposed to meet with the librarian and explain the library function. I did not meet with the librarian after he told me to do so. And we admitted that. But he had met with the librarian two weeks before he was told to do so. So while he didn't follow the instruction, he did do what he was told to do, he just did it before he was told to do it. And some of these things have these kinds of explanations attached to them so that we have technical violations here, but when you get to the substance, it's not there. Thank you. Okay. Thank you, Mr. Thomas. Mr. Navid. May it please the Court. I'd like to start out by correcting an error made by Petitioner's Counsel in his argument in which he stated in response to Judge Dyke that the May 30, 2005, email was not contained in the record before the Court. That is incorrect, and you can see that at page 220 and 221 of the record before this Court, and 360 and 362. Page 220 and 221? Yes. In which they identify it as Exhibit 4H. In fact, Mr. Dietrich himself identified the May 30th. But where is it? Well, I can say, however, that the May 31st email is not in the record before this Court. Why not? This is the key thing, you know? Your Honor, I cannot explain why, having not participated in assembling the appendix. However, I can note that this Court is generally not reviewing the facts so much as it is determining whether or not the case is supported by the Chief Justice. There's a real question as to whether somebody can be discharged, and you assume that that's what happened here, for sending an email outside of the chain of command or complaining about his treatment. At any event, will the two of you collaborate to send us, from the record below, that document and anything else that we're talking about here that we haven't been able to find? I certainly can make sure that happens, Your Honor. And to get it to us within a few days, within a week? I'll coordinate that, Your Honor. Okay. Do you know where we find the record of the decision that terminated? The written decision that terminated? The decision itself? Yes. That would be found at the record. The proposed notice of removal begins on page 39 of the record, and the decision follows that on page 43. In the joint appendix? Yes, in the joint appendix. Page 43 of the joint appendix is where the decision exists. Okay. What role did the email play in his removal? Did the deciding official testify that as the most serious charge? Well, the deciding official did say independently that, taken, for example, if he had simply failed to meet one deadline and failed to communicate that, that wouldn't be serious. However, he did, and in the letters, notes that the charges against him are serious and does not delineate between the email and the other charges. The board goes through each of the charges and actually gives more time to most of them. Well, it gives considerable space and reference to each of the charges, right? Yes. It deals with each of them in order. It does not delineate one as being dispositive over the other. Yes, Your Honor. And I will say that there is testimony in the record, however, that the AWOL charge was generally, at least by the board, considered minor. Although, again, that was within oral argument and as part of the hearing, so there's a question of how much weight that should be given. Well, didn't the board say that the most serious charge was the email charge? Well, there is some evidence that the email was a very serious charge, and that independently, taken alone. Did the board on the board say that the email charge was the most serious? I do not believe so, but I believe there's some indication, again, that's freestanding, the email is the most serious of charges. So, yes, there is at least some reason to focus upon the email. Okay, so there's a reason to focus on the email, but the problem that I see with the email is can you really discharge somebody, assuming hypothetically that that's going to happen, can you really discharge somebody for sending an email complaining about treatment to Human Resources? He was not discharged on that basis alone. Let's assume LeChant says it's the most serious charge, you know, you've got to send it back and look to see whether he was discharged or not. But just hypothetically, let's assume he was discharged solely, hypothetically, solely because he sent the email. How could that be? for sending an email to Human Resources complaining about his treatment? It's not sending an email, it's sending repeated emails, which he did. And it was Human Resources also that pointed out to him that this is not an issue we resolve, you need to resolve this issue in your chain of command. Is there any suggestion in the record that Human Resources didn't have some responsibility to deal with the treatment of employees? Actually, this branch of Human Resources did not. It was not within his chain of command. There was a local Human Resources office. He did not go to that Human Resources office. Instead, he went to the Human Resources in the Pacific. Now, they are correct that the Human Resources in the Pacific was involved in the resolution of a previous difficulty he had, but at that time he wasn't under the chain of command at the base in Japan. Then it makes even less sense. If this was a recipient totally outside of his loop and he sends them an email complaining, and let's say that he shouldn't have done that, he should have sent it directly to his supervisor who might well have deep-sixed it or something else instead of sending it on. So let's say he sends it to somebody who's in no position to do anything about it, and then they fire him for that. But, Your Honor, this isn't him simply sending a email. This is him having sent a series of emails. That's not the charge. Culminating in the May 31st email. Is that in the charge? Is that in the A.J.'s decision? Yes, it does. They mentioned this particular email. In the notice of proposed removal. And, by the way, notice of... It's not the same version that Judge Newman had, that this charge was based on sending the May 31st email. The notice of proposed removal, by the way, also, just to clarify for the Court, does contain a typo and refers to an email on the 21st. However, again, Mr. Dietrich identified the hearing, the May 31st email, as the May 21st email. But we're reviewing the decision which sustained the removal. That refers, as I recall, only to one email. Is that what I misremember? Do they identify others? The decision, the MSPB's decision? The one that's being reviewed is the MSPB's decision. Well, it says here in the charge, You have been repeatedly instructed that there are official means to pursue the types of allegations you continue to make outside the chain of command. You've been informed you can avail yourself of a more immediate office. Despite all of this, you continue to make inappropriate remarks and accusations outside the chain of command. There seems to be something in the charge here that suggests more than a single email. That's correct, Your Honor. And the MSPB's decision on page 20 and 21 of the record also talk about some of these additional emails and their dates. You're talking about the AJ's decision? Yes, I am, Your Honor. They aren't identified, are they? In the administrate judge decisions, the dates are identified. Yes, that's correct, Your Honor. And we also mention those dates in our brief. But I think we're getting away from the hypothetical about if he was charged with sending an email outside of the chain of command, complaining about his treatment of human resources, could he be discharged for that? I mean, we have cases under the Whistleblower Protection Act suggesting that going out of the chain of command is more protective than complaining within the chain of command. Well, Your Honor, the Whistleblower Protection Act also provides, and the Whistleblower Protection Act case law, also provides that misconduct is not protected despite the presence of what may be a protected disclosure. In this case, he was actually- You can't call whistleblowing misconduct. That's the point. If somebody is complaining that the treatment is illegal or improper, that's protected whistleblowing, right? Is there a whistleblowing action before us in this case? It may be, and there is no whistleblowing action. It's not raised below us. It's not raised below us, not before us. Yes, that's correct, Your Honor. But if somebody is discharged for complaining outside the chain of command, that would appear to be discharging somebody from engaging potentially in protected activity, right? It depends upon the nature of the complaint. Again, if we're assuming that this is protected activity, and say, in the Plain Vanilla case, where someone went, say, to some other supervisor to complain about his treatment, there might be a Whistleblower Protection Act case there. There might be a protected disclosure. And we'd have additional findings dealing with the Whistleblower Protection Act elements, wouldn't we? That's correct. We'd be determining it on the basis of a record we'd have before us. I mean, an example of one case in which I'm aware of was the Greenspan case, in which this court found that you could not discipline someone based upon making unfounded statements. But the key in that case was that he was disciplined specifically for making unfounded statements, not that he had engaged in misconduct. And there's a distinct difference in this case. You can't define misconduct as something that's protected by the Whistleblower Protection Act. If somebody's complaining about misconduct and says, I've been mistreated, and he sends it outside the chain of command, if you just assume hypothetically that that is protected conduct under the Whistleblower Protection Act, you can't say, well, we can regulate how people complain under the Whistleblower Protection Act. We're not, under those circumstances, discharging him for protected conduct. We're discharging him for going outside the chain of command. That's a problem, isn't it? Your Honor, he can't be disciplined for those statements. He could be disciplined for wrongful or disruptive conduct. Wrongful or disruptive conduct is not conduct. What's the wrongful or disruptive conduct? Well, in this case, it's harassment. It's after being told by— Harassment. Harassment. Doing what? By email. Is harassment complaining about his mistreatment? By—after having been told by the individuals at the Human Resources in the Pacific that this is not something which we resolve, he continued to send emails to them, complaining and listing his difficulties that were supposed to be resolved in the chain of command. Human Resources had told him the proper avenue. What's the harassment?  who's not going to be able to resolve your problem, who's not in a position to resolve your problem, after they've told you, I can't resolve your problem. And his supervisor did provide that he does— he can go through the chain of command. He could go to the MSPB, depending upon the nature of his case. He could go to the EEOC. He could go through their— there was a Human Resources office at their base that he could go to. He could file a grievance. And he was counseled on the number of options that were available to him. This was not an option that was available to him, and yet he continued to send emails to this director in the Pacific. I'd like to just briefly clear up one more point with regards to the difference between a 14-day suspension and, ultimately, a removal. I think, ultimately, while Petitioner has attempted to tabulate this as the difference of adding on two charges, if you actually look at the 14-day suspension, it wasn't simply the addition of two charges that had led to the upping the penalty from a 14-day suspension to removal. Instead, the testimony indicates, and the removal notice itself indicates, that he was moved from a 14-day suspension to removal. The 14-day suspension was withdrawn based upon other Douglas factors. Basically, the fact that they had determined, as time went on, that the simple penalty of a 14-day suspension was not adequate. They determined that he continued to not meet any of his deadlines, even after having been warned, and that they hoped the 14-day suspension would at least have produced some noticeable change in his behavior, which it did not. But he wasn't suspended for the 14 days, was he? No. But he was removed. And if the subsequent events hadn't taken place, it would logically follow that the 14-day suspension would have been imposed, and that would have been the end of that issue. We don't know what would have happened next. Is that accurate, what happened? Yes, Your Honor. But during that time, after having provided notice that he had not met any of the deadlines, he continued to ignore his deadlines. And we don't contend that the 5-day suspension, which was withdrawn, the 14-day suspension, which was withdrawn, would qualify as progressive discipline. Because he was withdrawn. He was not disciplined. He says he met a lot of deadlines, that everything that was given to do at a deadline, he met a lot of them. He didn't miss the ones which have been targeted or identified as the basis for the various disciplinary actions. We were told, because we don't know, but we're told that there is a much larger picture there taking place. And it's very hard to know what to focus on. I must say I share the difficulty with a particular email, how you can harass your human resources department by sending them an email saying that I'm not being treated fairly. One would think that they would not view that as harassment. Your Honor, it's not his human resources department. While they are within the Navy, there was a human resources officer over at the base that was appropriate for him to go to. So he sent it to the wrong human resources officer, and the Navy is harassed to the point of firing him? He continued to send it to the wrong human resources officer, even after that human resources officer informed him that he was not the appropriate person to be sending this to on multiple occasions. So the real question is perhaps the relevance of the proportionality of the penalty as opposed to the infraction with which he's charged. Well, Your Honor, losing your job after a good number of years of federal service is not a casual event in one's life. Your Honor, given the serious nature of the charges, the fact that there was a May 27th previous letter of discipline, the repeated behavior, the fact that he was a supervisor held to a higher standard, and that there was no discernible attempt to comply with the supervisor's decisions, or even inform the supervisor that he had a difficulty with any deadlines, we believe the impenalty would be appropriate, and that is best left to the discretion of the agency. The Board says, I note, as did the proposing and deciding officials, the serious nature of the charges, the lack of solitary effect on appellant's counsel of repeated warnings, instructions, and counselings, and they go on to recite a good deal more of what I think you just said to us about their findings of fact, which don't seem too arbitrary and capricious. That's correct, Your Honor. If there are no further questions, for these reasons and the reasons set forth in our brief, we respectfully request that this Court affirm the decision of the Board. Thank you. Thank you, Mr. Mulder. Mr. Thomas, a couple of minutes. What's arbitrary and capricious here? Mr. Thomas? In my view, when you propose a suspension for 14 days based on a set of facts, a very similar set of facts, in fact, a less serious set of facts, and then, a couple of weeks later, you propose a removal based on something less serious to go from 14 to removal, in my view, is arbitrary, capricious, or at least an abuse of discretion. You didn't raise any whistleblowing charges, did you? We didn't raise any charges, but I would say that what he was doing in terms of the complaint would fall under the protection of the Whistleblower Act if he wanted to bring one, but he didn't. He didn't. He didn't. And we'd have a record as to whether or not the conduct was outside the Whistleblower Protection Act elements if you had brought the case, wouldn't we? Yes, sir. Page 265 of the Joint Appendix is the page where the deciding official concedes that most of the offenses would be characterized as minor offenses except the email offense, which he regards as very serious, and he said that that was very offensive to him. And I think that's consistent with the table of penalties. If you look at the table of penalties, this would basically amount to insubordination, and insubordination is considered more serious than failing to meet a deadline, and so I think it is the most serious offense. I disagree with counsel that he was charged with anything other than one email. The record is not entirely clear what email that is because they alleged it was May 21, and there were several emails that were discussed throughout the case. The agency said that it was the May 31 email, not the email set forth in the charge, but the email set forth in the charge was not attached to the charge, and so we assume that the agency is right when they say that it's the May 31 email. I stand corrected. That was introduced as an exhibit before the administrative law judge. It is not a part of this record, and we will certainly submit that after today's hearing. But he was only charged with one email. There was some discussion about him having been informed of the chain of command policy, but he was not charged with violating that policy except with regard to this one email. There were no repeated emails forming the basis of the charge. Now, there were aggravating factors used by the deciding official that we contend were improper. He used a reprimand that in his testimony he conceded that he later learned he should not have used as an aggravating factor, and he also used as the aggravating factor that Mr. Dietrich did not complete these deadlines even after he had been given the 5-day suspension and the 14-day suspension. We regard that as improper because he was not given those suspensions. They were both withdrawn. Thank you. Okay. Thank you, Mr. Thomas and Mr. Maynard.